**In re OMAHA NATIONAL CORPORATION.**

**Appeal No. 86–1567.**

United States Court of Appeals, Federal Circuit.

May 20, 1987.

Dennis L. Thomte, Zarley, McKee, Thomte, Voorhees & Sease, Omaha, Neb., argued for appellant.

Nancy C. Slutter, Asst. Sol., Arlington, Va., argued for appellee. With her on the brief were Joseph F. Nakamura, Sol. and Fred E. McKelvey, Deputy Sol., Washington, D.C.

Before NIES, Circuit Judge, COWEN, Senior Circuit Judge, and ARCHER, Circuit Judge.

NIES, Circuit Judge.

Omaha National Bank appeals from the decision of the United States Patent and Trademark Office (PTO) Trademark Trial and Appeal Board, refusing to register, as a service mark for banking services, the following mark shown in application Serial No. 467,425, filed February 27, 1984:

The board held that the word "FirsTier" in appellant's asserted mark is the phonetic equivalent of "first tier," a term which is merely descriptive of banking services and, thus, was unregistrable on the Principal Register under section 2(e)(1) of the Lanham Act, 15 U.S.C. § 1052(e)(1) (1982), without a disclaimer [1] by appellant of exclusive rights in that expression apart from the mark as a whole. We affirm.

### I

The evidence made of record during examination to establish that "first tier" is merely descriptive of banking services consists of excerpts from articles on banking from general and business publications. The following examples are illustrative of this material:

| | |
|---|---|
| New York Times: Feb. 14, 1982 | "Chemical is among the *first-tier banks*, with $19 million to Columbia Pictures, $16.5 million to United Artists, and a revolving line of credit to Orion Pictures as well." |
| Legal Times Jan. 16, 1984 | "[T]he merger could have the positive effect of 'strengthening the ability of *banks below the first tier* in Pennsylvania to compete with the largest banks in a number of markets.'" |
| American Banker Sept. 27, 1983 | "[T]he key to becoming a *'first-tier investment bank'* will be 'quality service, excellent personnel, and an integrated approach to clients that takes greatest advantage of all our professional staff....'" |
| The Washington Post April 16, 1982 | "[T]he *third tier* would include smaller retail banks rather than the big money-center banks that comprise the *first tier*, or the large regional institutions generally considered *second-tier banks*." |
| Fortune Dec. 14, 1981 | "[I]t takes time—four years, according to some bankers—to win a customer's trust. And it takes even longer to *'move up tier,'* as speakers of bankerese put it. In banking its worth a lot to be a *'first tier'* bank that corporate customers rely on for major financial needs. That cherished status yields not only loan business, but also interest-free compensating balances and fees on services such as money transfers and letters of credit." |

(Emphasis added.)

From this evidence of how "first tier" was currently being used, the PTO's trademark examining attorney concluded that in the banking industry, banks can be ranked in "tiers," based on such factors as the amount of assets, the extent to which they can serve the financial needs of large corporations, the geographic scope of their operations, and the quality of their services, and that large high-quality banks whose client base includes large corporate accounts are referred to as "first tier banks."

Before the board, appellant did not dispute the fact that "first tier" is a term of art which denominates a meaningful class of banks at least to knowledgeable persons in the industry. On appeal, appellant attacks the record evidence as nonprobative "hearsay." Not only does this argument appear to be tardily made,

---

**1.** Section 6(a) of the Lanham Act, 15 U.S.C. § 1056(a) (1982), provides in pertinent part:

The Commissioner may require the applicant to disclaim an unregistrable component of a mark otherwise registrable.

but also it is meritless. The articles were not used to support the truth of statements in the text but to illustrate common descriptive use of the expression "first tier." As evidence of such descriptive usage of "first tier" in connection with banking services, the articles are competent, *In re Bed & Breakfast Registry*, 791 F.2d 157, 160–61, 229 USPQ 818, 819–20 (Fed.Cir.1986); *Dan Robbins & Assocs., Inc. v. Questor Corp.*, 599 F.2d 1009, 1014, 202 USPQ 100, 105 (CCPA 1979), and fully support the board's finding that "first tier" is descriptive of banking services.

## II

■ Accepting that "first tier" is a descriptive "word of art" in the banking industry, appellant next argues that the term is, nevertheless, not "merely descriptive" within the meaning of section 2(e)(1)[2] because this descriptive meaning of "first tier" would be known only to a few experts intimately involved in the banking industry and not to "ordinary" or "average" customers.

The board rejected this argument, as a matter of fact, because the term "first tier" appeared in a number of publications directed to the general public, such as *The Washington Post, New York Times,* and *Fortune,* not merely in specialized publications directed to bankers. Thus, the board inferred wider knowledge of the connotation of "first tier" banking services beyond a "few" experts. Based on the evidence, we cannot say that this finding by the board is clearly erroneous.

Appellant advances a variation of this argument, arguing that the board failed to determine descriptiveness of "first tier" by its meaning to "average" or "ordinary" customers, citing *In re Colonial Stores, Inc.*, 394 F.2d 549, 551, 157 USPQ 382, 385 (CCPA 1968) (descriptiveness determined from standpoint of "potential purchaser"). *See also In re Abcor Development Corp.*, 588 F.2d 811, 814, 200 USPQ 215, 218 (CCPA 1978) ("descriptiveness ... is to be

determined from the standpoint of *the average prospective purchaser"*). Appellant asserts that the "vast majority" of its customers would not be knowledgeable of the meaning of "first tier" in the banking industry.

■ Appellant misunderstands the import of the above decisions. In context, "average" or "ordinary" consumers simply refers to the class or classes of actual or prospective customers of the applicant's particular goods or services. In this sense, corporate users of banking services who, appellant admits, understand the industry meaning of a "first tier" bank are "average" or "ordinary" customers. That corporate customers may constitute a smaller number of accounts than individuals is irrelevant. Descriptiveness is not determined by its meaning only to the class of regular customers with the largest head count.

## III

■ Finally, appellant would limit merely descriptive rejections, as a matter of law, to terms which identify a characteristic or quality of an article or service, for which proposition it cites *Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1545, 222 USPQ 292, 296 (11th Cir.1984). We cannot agree. The factual situations in which mere descriptiveness must be resolved are too varied to lend themselves to resolution under any rigid formula. *Accord In re Abcor*, 588 F.2d at 813, 200 USPQ at 217–18. In any event, appellant admits that it could not preclude the descriptive use of "first tier" being made in connection with banking services or interfere with the equal rights of others to denominate themselves "first tier" banks. It asserts it seeks only protection for "FirsTier" in the distinctive design set forth in its application. A disclaimer of exclusive rights in the phrase "first tier" apart from the mark as shown in the drawing will secure to appellant exactly the extent of rights it desires. *See United*

---

**2.** Section 2(e)(1) provides that registration may be refused of a mark which "when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them...." This provision applies equally to service marks under 15 U.S.C. § 1053.

*States Steel Corp. v. Vasco Metals Corp.,* 394 F.2d 1009, 1012, 157 USPQ 627, 630 (CCPA 1968).

Having considered the above and all other arguments of appellant, we conclude that appellant has shown no error of fact or law in the board's decision. Accordingly, the decision of the board is affirmed.

AFFIRMED.