( F114)

SDB
Paper No. 18

FOR PUBLICATION IN FULL

U. S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

In re Newport Fastener Company, Inc.

Serial No. 424,364

Edward D. O'Brian for applicant.

Ernest H. Land, Trademark Examining Attorney, Law Office 8
(Sidney Moskowitz, Managing Attorney).

Before Rice, Rooney and Seeherman, Members.

Opinion by Rice, Member:

An application has been filed by Newport Fastener
Company, Inc. to register, on the Supplemental Register, the
designation "TYLE TYE" for metal fasteners used in construction
industries, namely, strips for holding tile in place on
roofs,[1] use since August 30, 1930, through predecessors,
being asserted.  The application includes the following
disclaimer, worded in the manner requested by the Examining
Attorney:  "No claim is made to the exclusive right to use

---

[1] Serial No. 424,364, filed may 4, 1983.

'TYLE TYE', the phonetic equivalent of 'TILE TIE', apart from the mark as shown."

The application also includes a claim to ownership of a (since expired) registration, issued on the Principal Register under the provisions of Section 2(f) of the Trademark Act of 1946, 15 U.S.C. 1052(f), of the mark "RINESS TILE TIE 'THE TIE THAT BINDS'" for ties for roofing tile.[2] This registration contains a disclaimer of the words "Tile" and "Tie" apart from the mark as shown. Additionally, the record indicates that applicant is the owner of a subsisting registration, issued on the Principal Register under the provisions of Section 2(f), of the mark "RINESS TILE TIE" ("TILE TIE" disclaimed) for metal fasteners used in construction industries--namely, wires for holding tile in place on roofs.[3]

Registration on the Supplemental Register has been refused under Section 23 of the Act, 15 U.S.C. 1091, on the ground that the designation sought to be registered by applicant is incapable of identifying applicant's goods and distinguishing them from those of others. In this regard, it is the Examining Attorney's position that "TYLE TYE" is the

---

[2] Registration No. 786,660, issued March 16, 1965, and now expired.

[3] Registration No. 1,332,825, issued April 30, 1985, based on an application filed May 23, 1983.

2

misspelled phonetic equivalent of "tile tie," and that "tile tie" is the generic name for applicant's goods. In support of the refusal to register, the Examining Attorney points to a dictionary definition, certain usages appearing in brochures submitted by applicant, and the disclaimers in applicant's expired and subsisting registrations and in its instant application.

Applicant, on the other hand, maintains that the evidence of record is insufficient to establish that "tile tie" is generic as applied to its goods; and, in any event, that by virtue of the misspelling, the designation "TYLE TYE" has a distinctive appearance, or "design features," which render it capable of distinguishing applicant's goods, and hence registrable, under the rationale of In re Wella Corp., 635 F.2d 845, 196 USPQ 7 (CCPA 1977), In re Carolyn's Candies, Inc., 206 USPQ 356 (TTAB 1980), and In re School Book Fairs, Inc., 229 USPQ 556 (TTAB 1986). In this regard, applicant argues that "TYLE TYE" does not consist merely of a phonetic misspelling of "tile tie," but rather involves "a particular type of misspelling such that the double 'Y's' give to the mark an appearance factor akin to the reiteration of a sound or syllable or the like which is considered to suggest something related to the goods but which is different from the goods..."; and that the repetitive aspects of the use of the letter "Y" in

3

both words of "TYLE TYE" when there is no necessity for such use is enough of a design feature to permit the mark to be registered. In support of its request for registration, applicant has submitted an affidavit detailing its long and assertedly substantially exclusive use, through its predecessors, of "TYLE TYE" and "RINESS TILE TIE". The affidavit is accompanied by brochures showing early use of those designations by applicant's predecessors.

We turn first to applicant's "distinctive appearance" or "design feature" argument. Inasmuch as applicant seeks registration on the Supplemental Register, the ultimate issue to be determined herein is whether "TYLE TYE" is capable of distinguishing applicant's goods. See: Section 23 of the statute. It has been held that, although an entire mark cannot be disclaimed and still be registered, even on the Supplemental Register, nevertheless where the unregistrable components of a mark are presented in a distinctive display which creates a commercial impression separate and apart from the unregistrable components, it is possible to disclaim the unregistrable components and still have a mark which is registrable as a whole. See, for example: In re Wella Corp., supra; In re School Book Fairs, Inc., supra; and In re Carolyn's Candies, Inc., supra. Whether such a designation is registrable, and, if so, upon which register, depends upon how distinctive the display is. See: In re Behre Industries, Inc., 203 USPQ 1030 (TTAB 1979).

4

In each of the three cases cited by applicant, registration on the Supplemental Register was permitted because the disclaimed, unregistrable, literal portion of the asserted mark was presented in a stylized form which was deemed distinctive enough to render the designation as a whole capable of functioning as an indication of origin for the applicant's goods or services, and thus registrable on the Supplemental Register. Cf. In re Cosmetic Factory, Inc., 220 USPQ 1103 (TTAB 1983), and In re Anchor Hocking Corp., 223 USPQ 85 (TTAB 1984) [in each of these cases, the asserted "distinctive display" was found insufficient to warrant registration on the Supplemental Register]. The Wella and Carolyn's Candies cases involved disclaimed, unregistrable words ("BALSAM" and "YOGURT BAR", respectively) presented in stylized lettering, as shown below,



while in the School Book Fairs case the letters of the unregistrable disclaimed words were slightly stylized and some of them were interlocking, as shown below:

SCHOOL BOOK FAIRS, Inc.

5

In the present case, there is no stylization of the lettering of the designation sought to be registered by applicant, nor is there any design in the arrangement or positioning of the letters.  Rather, applicant seeks to register "TYLE TYE" in typed form, pursuant to Trademark Rule 2.51(d), as shown below:


TYLE TYE


Applicant's only claim to "distinctive display" lies in the fact that "TYLE TYE" is a misspelling of the words "tile tie," that is, that applicant has used a letter "Y" in each word in lieu of a letter "I."  As noted by the Examining Attorney, however, it is well settled that mere misspelling (particularly, as here, a phonetically equivalent misspelling) does not add trademark significance to an otherwise unregistrable term.  See, for example:  Miller Brewing Co. v. G. Heileman Brewing Co., 561 F.2d 75, 195 USPQ 281 (CA7 1977), cert den 434 US 1025, 196 USPQ 592; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 US 315, 39 USPQ 402 (1938); In re Jacqueline Cochran, Inc., 196 USPQ 715 (TTAB 1977); Borden, Inc. v. Minnesota Mining and Manufacturing Co., 164 USPQ 318 (TTAB 1969); and cases cited in the foregoing.  See also:  J. Thomas McCarthy, Trademarks and Unfair Competition, §§11.12 and

6

12.12, pages 460-462 and 555-556 (2d ed. 1984). Under the circumstances, applicant's "distinctive display" argument, though imaginative, is unpersuasive.

This brings us to the question of whether the term "tile tie" is, in fact, the generic name for applicant's goods. As noted above, the Examining Attorney points, as evidence of genericness, to a dictionary definition, certain usages appearing in brochures submitted by applicant, and the disclaimers in applicant's expired and subsisting registrations and in its present application.

The Dictionary of Architecture and Construction (McGraw-Hill, Inc., 1975) defines "tile tie" as "a heavy braided wire used to secure tile to a roof."

As to the brochures, applicant, in support of its claimed right to registration, submitted the affidavit of its vice president, Mr. William McMurray, attesting to applicant's long use, through predecessors, of the designations "TYLE TYE" and "RINESS TILE TIE" for metal fasteners used in the construction industries, namely, wires and strips for holding tile in place on roofs. It appears from the affidavit that applicant's two earliest predecessors, Tyle-Tye, Inc., Ltd. and Riness Tile Tie Company, were competitors of one another, each of which eventually assigned its rights to applicant's immediate predecessor, Tyle Tye, Inc. The record includes one brochure from each of the two early predecessors.

According to the affidavit, Riness Tile Tie Company used the mark "RINESS TILE TIE" from about 1936 until 1959.  It is clear from the Riness Tile Tie Company brochure submitted by applicant that the Riness Tile Tie company sold wires for tying roofing tile in place.  The second page of the brochure contains the following matter (emphasis added by us) under the heading "STANDARD SPECIFICATIONS":

> TILE--Tile are to be applied with the Riness Tile Tie, fabricated from No. 10 handdrawn copper or brass or galvanneal wire, in random or standard lengths, the maximum length will be 14".  The first pan tile tie will be anchored 10½" on centers and between each pan tile with a No. 10, 5/8 copper staple or to an anchor set in the concrete slab 4½" up from eaves, and that portion of the tie extending below the staple or anchor will be turned up and will form an anchor for the first cover tile tie which is anchored to the booster tile, if boosters are not set in cement a special eave tie will be furnished so as to anchor the first cover tile and booster tile together, so that all tiles are anchored in the eaves.
>
> Tie--The eye of each tie will pass through the hole in each tile and will be locked therein with the succeeding tie, and so continued to the center of the rafter run, where they are anchored to a water-tight anchor and then continued to the ridge where each pan tile tie is anchored at the foot of ridge with a No. 10 copper staple to the roof base or to an anchor set in the concrete slab or to be anchored in the ridge built up of concrete.  The end of the last tie will extend through the cement to form an anchor for ridge tile.

8

RAKE TILE--Each tile in the first row of
cover tile at all gables is to be anchored
with 14 gauge copper or brass <u>wire</u> to the
copper nail supporting the rake tile,
<u>tying</u> all <u>ties</u> of first row solid at rake.

On the same page, a list of the advantages "OF THE RINESS TILE TIE" includes the statements, "Tile are wind-proof, being locked together between ties" and "Pans and cover tile are tied together, making the entire roof a complete fabricated sheet." Another page contains the statement (under the heading "ACHIEVEMENT"), "There is no second handling of tile and no over-lapping of tile tie materials ..." Other pages contain diagrams showing how to use the product. The various roofing components pictured therein are labeled with descriptive terms (accompanied by arrows pointing to the component in question) such as "COVER TILE," "PAN TILE," "GROUTING" "NAIL," and "ANCHOR." Among the pictured components are the wires used to tie the tiles together. The label used for such a wire is "TILE TIE" or, in some cases, simply "TIE." The diagrams also contain explanatory wording such as "TILE TIE WRAPPED AROUND NAIL FORMS ANCHOR."

In the same vein are the disclaimers of "tile tie" in applicant's expired and subsisting registrations (which have identifications of goods reading "ties for roofing tile" and "metal fasteners used in construction industries-namely, wires for holding tile in place on roofs," respectively).

In our opinion, the foregoing evidence, considered together, is sufficient to make a prima facie showing that the term "tile tie" is generic for wire used to tie roofing tile in place. Applicant, in turn, has not submitted any evidence in rebuttal of this showing. There is no affidavit stating, for example, that the term "tile tie" is not used generically for such goods by those in the trade. Rather, the affidavit submitted by applicant pertains to applicant's claim to long, continuous, and substantially exclusive use, through predecessors, of its asserted marks "RINESS TILE TIE" and "TYLE TYE". The bulk of the information in the affidavit has to do with tracing the chain of title to applicant.

Nevertheless, we note that the goods for which applicant seeks to register the designation are not the wire ties described above, but instead are "metal fasteners used in construction industries, namely, strips for holding tile in place on roofs." There is no use of the term "tile tie" to refer to these strips in the Riness Tile Tie Company brochure-- indeed, there is no mention of the strips whatsoever.

The second brochure submitted by applicant is the brochure, dated 1931, of applicant's other early predecessor, Tyle-Tye, Inc., Ltd. The principal product featured in the brochure is "a continuous metallic strip, one inch wide, to

10

which every tile is fastened by wires." In the brochure, these strips (sold in reels) are referred to by the generic term "metal strips," or simply "strips," and the designation "TYLE TYE" is used in connection therewith in the manner of a mark. Other products offered in the brochure, in conjunction with the strips, include anchors, splicers, and wires (sold in bundles cut to length) for tying tiles to the strips. The wires are referred to in the brochure as "tie wires," or simply as "wires." The term "tile tie" does not appear anywhere in the brochure.

While we have no doubt that the term "tile tie" (and its phonetic equivalent, "TYLE TYE") is descriptive of applicant's strips, which are used in the tile tying process, there simply is no evidence of record that the term "tile tie" is a generic name for the strips. Rather, it appears from the record that "tile tie" is a generic name for the wires used for tying tiles in place.

Under the circumstances, and considering applicant's long use, through its predecessors, of the designation "TYLE TYE" in the manner of a mark in connection with its strips, we are not persuaded that the designation "TYLE TYE" is incapable of identifying applicant's goods and distinguishing them from

11

Serial No. 424,364

those of others.   Accordingly, we conclude, on the basis of the record before us, that applicant is entitled to registration on the Supplemental Register.[4]

Decision:

The refusal to register is reversed.

J. E. Rice

L. E. Rooney

E. J. Seeherman
Members, Trademark
Trial and Appeal Board

OCT 2 3 1987

_____

[4]As indicated above, the disclaimer of record reads, "No claim is made to the exclusive right to use 'TYLE TYE', the phonetic equivalent of 'TILE TIE', apart from the mark as shown."  In view thereof, and since applicant seeks to register its mark simply in typed capital letters, applicant has disclaimed its entire mark. This disclaimer is inappropriate since an entire mark cannot be disclaimed and still be registered.  Moreover, since it appears from the record that "tile tie" is not a generic name for applicant's strips, we do not believe that there is any need for a disclaimer in this case.  However, if applicant wishes to include a disclaimer, it appears that the following would be an appropriate disclaimer:  "No claim is made to the exclusive right to use 'Tile Tie' apart from the mark as shown."  Cf. In re Omaha National Corp., 2 USPQ2d 1859 (CAFC 1987).  Accordingly, applicant's application will not be forwarded to issue at this time, but rather will be held at the offices of the Board in order that applicant may delete its disclaimer or submit an appropriate disclaimer, following which the application will be forwarded to issue.  The deletion, or the corrected disclaimer, should be submitted within thirty days from the date of this decision.

12