Mailed:
March 2, 2006

This Opinion is
Citable as Precedent
of the TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re King Koil Licensing Company, Inc.
_____

Serial No. 76565486
_____

Michael A. Carrillo and John A. Cullis of Neal, Gerber & Eisenberg LLP for King Koil Licensing Company, Inc.

Theodore McBride, Trademark Examining Attorney, Law Office 103 (Michael Hamilton, Managing Attorney).
_____

Before Walters, Rogers and Zervas, Administrative Trademark Judges.

Opinion by Rogers, Administrative Trademark Judge:

King Koil Licensing Company, Inc. (applicant) has applied to register THE BREATHABLE MATTRESS in standard character form, on the Principal Register, as a trademark for goods identified as "beds, mattresses, box springs and pillows" in Class 20.[1] The examining attorney has refused registration under Section 2(e)(1) of the Lanham Act, 15

_____

[1] The application is based on applicant's statement that it has a bona fide intention to use the mark in commerce.

U.S.C. § 1052(e)(1), arguing that the proposed mark utilizes a descriptive term (BREATHABLE) and a term that is generic for one of the items listed in applicant's identification of goods (MATTRESS for "mattresses").

In the office action refusing registration, the examining attorney also required a disclaimer of the generic term "mattress," implying that even if applicant were to respond to the office action by arguing against the refusal of the entire mark as descriptive, applicant would nonetheless have to disclaim the generic component. In support of the office action, the examining attorney (1) cited a dictionary definition of "breathable" as a term identifying an item that permits "air to pass through"[2] and (2) attached a three-page list of the results of an internet search for "breathable mattress," albeit without also providing any reprints of the web pages corresponding to the links appearing in the list of search results.

In response to the office action, applicant submitted the required disclaimer of "mattress" but argued that the examining attorney had not borne his burden of establishing that the entire mark is descriptive and that any doubt on the issue must be resolved in favor of applicant.

---

[2] Electronic version of The American Heritage Dictionary of the English Language (3rd ed. 1992).

2

Specifically, applicant argued that the evidence offered in support of the refusal was not competent, for reasons discussed below, and that the examining attorney had dissected the mark and considered BREATHABLE and MATTRESS individually rather than evaluating the mark as a whole. Further, applicant argued that thought or imagination of a prospective consumer would be needed before that consumer could draw a conclusion about the significance of the proposed mark when considered in relation to the identified goods.

When the refusal of registration was made final, applicant filed a notice of appeal.[3] Applicant and the examining attorney have filed briefs, but applicant did not request an oral hearing.

Applicant submitted with its brief a declaration from its president and CEO. The examining attorney has objected to consideration of this evidence on the basis that it was improperly submitted after the notice of appeal. The objection is well taken and the declaration has not been

---

[3] The record reveals that the examining attorney issued a final refusal in August 2004 and then reissued it in January 2005. The examining attorney's brief recounts issuance of the August 2004 action, but does not mention the reissued final. Nonetheless, in view of the fact that the notice of appeal was filed within six months of the reissued final refusal, we find that the notice of appeal was timely.

considered.  See Trademark Rule 2.142(d), 37 C.F.R. §
2.142(d).

Another evidentiary issue to be considered is
applicant's objection to internet evidence introduced by
the examining attorney, including the search results list
attached to the initial refusal of registration and
specific web pages attached to the final refusal of
registration.  Applicant contends much of this evidence
relates to entities that appear, based on the content of
the web pages or their internet addresses, to be located
outside the United States.  Applicant therefore contends
that such evidence should not be accorded much weight.  The
examining attorney, in contrast, argues, "While some of the
evidence may *refer* to places and things outside the United
States, each of the web pages that they [sic] examining
attorney attached as evidence, are '.com', and originate
from within the United States."

The examining attorney has provided no support for her
contention that an internet web page must be presumed to
originate from the United States merely because it is a
".com" page.  Nonetheless, the Board has held that, under
appropriate circumstances, web pages posted abroad may be
considered probative evidence on how a term will be
perceived.  See In re Remacle, 66 USPQ2d 1222 (TTAB 2002)

(Board found that professionals in certain fields, such as medicine, engineering, computers and telecommunications would be likely to monitor developments in their fields without regard to national boundaries, and that the internet facilitates such distribution of knowledge, so evidence from an English language web site in Great Britain held admissible); cf. In re Cell Therapeutics, Inc., 67 USPQ2d 1795 (TTAB 2003).  We therefore disagree with applicant's essential contention that a general consumer in the United States would not turn to foreign web sites when researching products they may be planning to purchase. Such consumers may visit foreign web sites for informational purposes, even if they are more likely to focus on internet retailers that can easily ship items or make items available for pick up in a store in a location convenient to the purchaser.  That would appear especially likely in a case such as this, where the item in question, a mattress, is large and potentially more expensive to ship than a smaller item.  Accordingly, while we do not discount entirely the impact of foreign web sites in this case, we find them of much more limited probative value than in the Remacle case.

We note, too, that we have not given much weight to the list of internet search results attached to the initial

5

refusal of registration, regardless of whether the web page links presented in the excerpt include a foreign country code. These web page excerpts do little to show the context within which a term is used on the web page that could be accessed by the link. Remacle, supra at fn. 2 ("The Examining Attorney's print-out of the results of an Internet search by the Yahoo search engine are of little probative value, largely because insufficient text is available to determine the nature of the information and, thus, its relevance."). See also, TBMP § 1208.03 (2d ed. Rev. March 2004); In re Fitch IBCA, Inc., 64 USPQ2d 1058 (TTAB 2002). Rather, we have concentrated on the actual web pages attached to the final refusal of registration.[4]

In the action finally refusing registration, and again in his brief, the examining attorney acknowledged that a combination of descriptive terms can result in a registrable mark; but the examining attorney argued that the terms "breathable" and "mattress" retain their ordinary meanings when used in applicant's proposed mark: "[THE

---

[4] Applicant argued against the internet search results listings attached to the initial refusal of registration not on the ground that they were listings rather than web pages and therefore devoid of context, but on the grounds that the results related to web sites from abroad or featured different goods. Nor did applicant, in its appeal brief, draw any distinction between the search results list and the web pages attached to the final office action. The examining attorney, in her brief, defended the evidentiary value of both types of evidence.

BREATHABLE MATTRESS] is nothing more than a combination of descriptive terms that immediately convey a feature of the goods, namely, that they are breathable mattresses. Applicant's mark is not suggestive because no thought or imagination is required to arrive at the conclusion that the goods are nothing more than mattresses with the ability to breath."[5]  (Brief, p. 8.)

Applicant reargues in its brief, as it did in its response to the initial refusal of registration, that the examining attorney has impermissibly dissected the proposed mark and has not considered it as a whole.  We find little merit in this contention, as there is nothing improper in the examining attorney putting into the record dictionary definitions for the terms "breathable" and "mattress."  Nor has the examining attorney engaged in impermissible dissection of a mark by determining that one term in the mark is descriptive and another generic.  This is all part and parcel of routine examination of a multiword mark.  The examining attorney's refusal is based on the mark as a

---

[5] We do not view the examining attorney's presentation of this "combination of descriptive terms" argument as constituting any sort of retreat from the contention that "mattress" is a generic term when used in connection with mattresses (a point which can scarcely be contested by applicant).  Rather, we view the examining attorney as asserting that the combination of terms does not result in a registrable mark.

composite, not only on a theory that each of the terms would be subject to refusal if used separately.[6]

Applicant argued in its brief, "the term 'breathable' is not typically used in connection with mattresses because previous mattress technology did not allow air to flow through the mattresses." (Brief, p. 4.) The support for this argument, however, is the late-filed declaration that we have already declined to consider. Thus, the argument is without proper support in the record. Even if it were a properly supported argument, we would not find it persuasive that a refusal would therefore be improper, because of the other evidence in the record. Finally, even if the term "breathable" has only recently become descriptive when used in relation to mattresses, because of advances in mattress design, the term would still be descriptive of mattresses that feature such design.

The analysis to be applied for distinguishing between what is descriptive and what is suggestive is articulated in In re Abcor Development Corporation, 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978) ("A term is suggestive if it requires imagination, thought and perception to reach a

---

[6] Neither applicant nor the examining attorney has discussed the significance of the word THE in the proposed mark. Had applicant made an issue of the use of THE, we would not find it a persuasive argument in support of registration. See In re The Computer Store, Inc., 211 USPQ 72, 74-75 (TTAB 1981).

conclusion as to the nature of the goods.  A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods," citing Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 189 USPQ 759, 765 (2nd Cir. 1976).)  In *Abcor*, the court also explained that the determination is to be made from the perspective of the average prospective purchaser.  Abcor, 200 USPQ at 218.  See also In re Omaha National Corp., 819 F.2d 1117, 2 USPQ2d 1859, 1861 (Fed. Cir. 1987)(In assessing the evidence of record and the likely perception of the designation used by applicant, we adopt the point of view of the average or ordinary consumer in the class of prospective purchasers for applicant's services.)  Moreover, whether a designation is merely descriptive is determined not in the abstract, but in relation to the goods or services for which registration of the designation is sought, and the context in which it is being used on or in connection with those goods or services.  See In re Bright-Crest, Ltd., 204 USPQ 591, 593 (TTAB 1979).

In the record, there is a reprint of a web page from www.furniturefind.com, which features a product identified as a "breathable mattress."  This web page lists an "800" number for placing orders, lists hours for operators as

"EST" and quotes prices in dollars.  There is nothing to indicate that this entity is located outside the United States.  To the contrary, it appears to be an entity based in the United States.  There is also a reprint of a web page from www.shepherdsdream.com, which features a "breathable mattress" and discusses the use of various types of fibers in mattresses as affecting the breathability of the mattress.  This web page also includes discussion of other items of breathable bedding and compares and contrasts the American bedding experience with historical trends in Europe and even Japan.  Because the page refers at one point to "dubious beds, offered to us by our American industrial machine," we find that this page, too, is from an entity in the United States.  The web page www.momslinenchest.com features a breathable mattress pad, lists an "866" area code toll-free shopping number and lists prices in dollars.  We conclude that this site, too, relates to an entity in the United States.  Finally, there is a reprint of a web page from "SavingsGuru" "an eBay marketplace" (http://gymboree_sporting.savingsguru.com), which lists among its "Crib Mattress listings" a "baby crib waterproof, breathable, mattress pad cover."  Again, prices are denominated in dollars, and again, we find that this is a web site that would be accessible by prospective

consumers in the United States searching for products available in the United States.

We do not mean to suggest, by virtue of our detailed consideration above of the question whether these particular items of internet evidence are "from" the United States, that this is an exercise that must always be undertaken by examining attorneys or applicants. In view, however, of applicant's argument that most of the internet evidence should be discounted, we have given these items detailed consideration to demonstrate that, even under applicant's view of this case, there is evidence supporting the refusal of registration.

The examining attorney has also made of record evidence that demonstrates use of the term "breathable" in conjunction with other items, such as clothing. While this evidence is probative of the likelihood that consumers would understand the term to have its normal meaning when used in conjunction with fabric or clothing, it is somewhat less probative on the question whether consumers would find the term incongruous or unusual when used in conjunction with mattresses.

While some of the evidence has limited probative value, there is sufficient probative evidence to support the examining attorney's refusal of registration. There

can be no dispute that "mattress" is a generic term when used in conjunction with the identified goods and we discern no plausible theory for concluding that consumers would consider "breathable," when used in conjunction with the generic term, to be incongruous or unusual and therefore require thought or cogitation to reach a conclusion about the meaning of the proposed mark. Rather, the term "breathable" would retain its ordinary dictionary meaning, i.e., it would indicate to the prospective mattress purchaser that the mattress allows air to circulate through it.

For reasons discussed on the shepherdsdream.com web page, it appears that there may be benefits to a sleeper from sleeping on a breathable mattress.[7] Thus, we find that the term is used by purveyors of mattresses or related bedding products precisely because it is likely to be perceived by consumers as indicating that these products are breathable and therefore desirable. We need not put to rest the question whether the products provide health

---

[7] We also note that in the list of results from the examining attorney's search of the internet, attached to the initial refusal of registration, there are numerous excerpts that contain links to web pages that appear to discuss the efficacy of claims that breathable bedding products for infants will help reduce the incidence of SIDS, or sudden infant death syndrome (we take judicial notice of the meaning of SIDS, see The Random House Dictionary of the English Language, 2d ed, 1987, at pp. 1777 and 1900).

benefits or even better sleep. It is sufficient for this appeal to determine that the mattress and bedding products industry uses the term in a descriptive sense.

Based on the record present in this case, we hold the proposed mark, THE BREATHABLE MATTRESS, to be merely descriptive for the identified beds[8] and mattresses.

Decision: The refusal of registration under Section 2(e)(1) is affirmed.

---

[8] The term "bed" is defined broadly enough to include a mattress. We take judicial notice of the following: "bed … 1.a. A piece of furniture for reclining and sleeping, typically consisting of a flat, rectangular frame, a mattress resting on springs, and bedclothes." The American Heritage Dictionary of the English Language (New College ed. 1976).