THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: February 27, 2008

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Rosemount Inc.

_____

Serial Nos. 78180535 and 78180540[1]

_____

Judson K. Champlin of Westman, Champlin & Kelly, P.A. for
Rosemount Inc.

Michael Litzau, Trademark Examining Attorney, Law Office
104 (Chris Doninger, Managing Attorney).[2]

_____

Before Drost, Kuhlke and Bergsman, Administrative Trademark
Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Rosemount Inc. has filed applications to register the

mark "REDUCER" (in typed form)[3] and "DOUBLE REDUCER" (in

typed form)[4] for goods identified as "flow meters used for

_____

[1] On June 27, 2007, the Board consolidated these appeals for the
purpose of briefing.

[2] The above applications were originally examined by different
examining attorneys, but were subsequently reassigned to the
attorney listed in the caption to prepare the appeal brief.

[3] Application Serial No. 78180535, filed October 31, 2002.

[4] Application Serial No. 78180540, filed October 31, 2002.

measuring flow through pipes; vortex flow meters" in International Class 9.

The applications were initially filed for registration on the Principal Register under Section 1(b) alleging an intention to use the marks in commerce. Registration was originally refused under Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), on the basis that "REDUCER" and "DOUBLE REDUCER" are merely descriptive of applicant's goods. In its responses, applicant argued against the refusals based on mere descriptiveness. After the notice of appeal was filed, the Board restored jurisdiction to the examining attorney to consider applicant's request to amend to the Supplemental Register in each application. The examining attorney initially refused amendment inasmuch as the applications were not based on use in commerce. After applicant filed allegations of use in both applications, the examining attorney accepted the amendments to allege use. In application Serial No. 78180535, the examining attorney refused registration on the Supplemental Register for the mark "REDUCER" under Section 23 of the Trademark Act, 15 U.S.C. §1091, on the ground that it is incapable of identifying applicant's goods because it is generic. In application Serial No. 78180540, the examining attorney refused registration on the Supplemental Register for the

mark "DOUBLE REDUCER," pending applicant's submission of a disclaimer for the word "REDUCER" based on a disclaimer requirement made pursuant to Trademark Act Section 6, 15 U.S.C. §1056, on the ground that "REDUCER" is generic.[5]

When the refusals were made final, the Board resumed the appeals, and consolidated them after applicant filed its brief in each case. The consolidated appeals have been fully briefed.

As a preliminary matter, although applicant's initial request to register on the Supplemental Register was presented as an alternative, in its subsequent responses to the office actions in both applications applicant clearly requests registration on the Supplemental Register. In addition, in its supplemental brief, applicant only addresses the issue of genericness and in its reply brief applicant states that "at most the marks are descriptive" and continues to request registration on the Supplemental Register. In view thereof, the only issue we must determine on appeal, as the examining attorney presented in his brief, is whether the term "REDUCER" is generic for the

---

[5] Failure to comply with a disclaimer requirement is grounds for refusal of registration. See In re Omaha National Corp., 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987); In re Richardson Ink Co., 511 F.2d 559, 185 USPQ 46 (CCPA 1975); In re National Presto Industries, Inc., 197 USPQ 188 (TTAB 1977); In re Pendleton Tool Industries, Inc., 157 USPQ 114 (TTAB 1968).

identified goods and incapable of distinguishing applicant's goods, and therefore is unregistrable on the Supplemental Register.

When a proposed mark is refused registration as generic, the examining attorney has the burden of proving genericness by "clear evidence" thereof. See In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987); see also In re Gould Paper Corp., 834 F.2d 1017, 5 USPQ2d 1110, 1111 (Fed. Cir. 1987). The critical issue is to determine whether the record shows that members of the relevant public primarily use or understand the term sought to be registered to refer to the category or class of goods or services in question. H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc., 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986); In re Women's Publishing Co. Inc., 23 USPQ2d 1876, 1877 (TTAB 1992). Making this determination "involves a two-step inquiry: First, what is the genus of goods or services at issue? Second, is the term sought to be registered ... understood by the relevant public primarily to refer to that genus of goods or services?" Ginn, *supra*, 228 USPQ at 530. Evidence of the public's understanding of a term may be obtained from any competent source, including testimony, surveys, dictionaries, trade journals, newspapers and other

publications.  See Merrill Lynch, *supra*, 4 USPQ2d at 1143 (Fed. Cir. 1987), and In re Northland Aluminum Products, Inc., 777 F.2d 1556, 227 USPQ 961, 963 (Fed. Cir. 1985).

We find that the genus of goods at issue in this case is adequately defined by applicant's identification of goods, namely, "flow meters used for measuring flow through pipes; vortex flow meters."  The printout from applicant's website provides further clarification that its flow meters have "the pipe reductions designed right into the flowmeter."  Application Serial No. 78180535 Office Action dated April 12, 2006 Attachment No. 4.  Thus, the genus includes flowmeters that contain pipe reductions or reducers, as discussed below.

Turning to the second inquiry, in support of his position that the relevant public understands applicant's marks to primarily refer to flow meters that contain reducers, the examining attorney submitted the following dictionary definitions for the terms "REDUCER" and "FLOW METER":

> Reducer n. 2. pipefitting that joins two pipes of different diameter.  WordNet (2003) retrieved from dictionary.reference.com;
>
> Reducer 2.  pipe fitting: a pipe fitting that connects two pipes of different diameters.  Encarta.msn.com; and

> Flow meter n. An instrument for monitoring, measuring, or recording the rate of flow, pressure or discharge of a fluid, as of a gaseous fuel. <u>The American Heritage Dictionary of the English Language</u> (3d ed. 1992).

Building on the meaning of a "pipefitting that joins two pipes of different diameter," the examining attorney relies on excerpts from third-party websites where the term "REDUCER" is used in connection with flow meters. The most pertinent portion from each of the website excerpts follows (emphasis added):

> Another important product enhancement is the introduction of **reducer** vortex flowmeters. Reducer vortex meters have a reduced diameter in the center of the pipe, where the bluff body generates vortices. The reduced diameter results in an accelerated flowstream, where the pipe narrows. The introduction of **reducer** vortex models has simplified vortex flowmeter installation and has improved the ability of vortex flowmeters to provide accurate measurement at low flowrates. flowcontrolnetwork.com;

> A solution may be to reduce the size of the meter to increase velocity by utilizing a pipe **reducer** on the inlet side and a pipe expansion section on the discharge side of the meter. If possible, avoid connecting the **reducer** and expander directly onto the meter. flowmeterdirectory.com;

> The VRE is an adjustable sample pressure **reducer** for sample pressures above 500 psig ... Adjustable rod-in-tube type design allows for variable pressure drop and flow control. Sentry-equip.com;

> Some manufacturers have introduced **reducer** vortex flowmeters, which have a reduced diameter in the center of the pipe. This not only simplifies vortex flowmeter installation, but also improves

the ability of vortex flowmeters to accurately measure fluids at low flow rates. automationworld.com;

The past five years have seen dramatic changes take place in the vortex flowmeter market. Some of these changes are ... **Reducer** vortex flowmeters have simplified installation and improved accuracy in measuring fluids at low flowrates. flowsearch.com;

Changing the size of an installed meter is unfortunately very expensive. Not only must the motor itself swap out ... requires the user to remove existing insulation, cut the pipe and weld in a reducer and expander, X-ray the welds, and reapply the insulation. This will not only be expensive, but will require a minimum twenty-four hour shutdown. Instead, users should take advantage of newer **reducer** technology. A **reducer** vortex meter includes built-in pipe reduction and expansion ... "InTech" at www.isa.org;

Flowmeter simplifies installation ... Designed with built-in **reducers** ... Yokogawa's Yewflo Vortex flowmeters can accommodate up to two meter-size step downs ... the new **reducer** design is available in integral or remote configuration ... "Control Engineering" at www.manufacturing.net/ctl/article/CA; and

The bottom (inlet) of the flow meter is fitted with a special reducing adapter. A standard 9/16" –18 hose fitting is threaded into the bottom of the **reducer**. This fitting will accept all standard LP swivel hose ends and allows the first stage to be connected directly to the inlet end of the flow meter via the LP Hose. Scubatools.com.

The examining attorney also submitted the following

excerpt from applicant's website:

Installation of a Vortex Flowmeter typically requires the piping to be reduced for best performance. The Rosemount 8800CR Reducer Vortex

7

> reduces the cost and complexity of installing
> Vortex flowmeters with the pipe reductions
> designed right into the flowmeter ... By building
> the reducers into the  meter, the Reducer Vortex
> can measure lower flows than any other Vortex
> meter.  emersonprocess.com.

Citing A.J. Canfield Co. v. Honickman, 808 F.2d 291, 1 USPQ2d 1364 (3rd Cir. 1986) (CHOCOLATE FUDGE generic for diet sodas with chocolate fudge flavor) and In re Hask Toiletries, Inc., 223 USPQ 1254 (TTAB 1984) (HENNA 'N' PLACENTA generic for hair conditioners containing henna and placenta), the examining attorney argues that:

> In the present case, the applicant and
> competitors use the term REDUCER to refer to a
> main feature of their flow meters.  Furthermore,
> as described in Section 2 below, numerous news
> articles use the word REDUCER to describe a new
> flow meter feature.[6]  Br. p. 5.

> Further, the examining attorney argues that:

> [T]he applicant's website, competitors' websites,
> and news articles ... evidence[] that the term
> "reducer" is commonly used and understood by the
> relevant public to refer to a main feature of
> flow meters.  Br. p. 5.

The examining attorney concludes from the evidence that "the only meaning of the term, as used within the industry and to the relevant public, is that of a generic meaning referencing a feature of flow meters."  Br. p. 9.

---

[6] We note that in the brief the examining attorney uses language more appropriate for a mere descriptiveness refusal, but we construe these arguments in the context of the genericness refusal, i.e., rather than describing a feature of the goods, the term names the goods.

In traversing the refusal, applicant explains that:

Flowmeters are used in industrial processes such as oil refineries, chemical plants, paper manufacturing plants, etc., to measure the rate of flow of fluids through piping.  In some configurations, it can be desirable to reduce the diameter of the piping at the point where the flow is measured.  In such situations, a tapered pipe is used which is generally referred to as a "reducer."  Typically, the reducer is a separate component which is purchased separately from the flowmeter and is not a part of the flowmeter.
Br. p. 2.

Applicant argues that the "term 'reducer' can refer to any number of things including reduced costs, reduced wastes, reduced maintenance, or reduced errors."  Br. p. 2. Applicant notes that "the mark REDUCER only describes one aspect of the goods out of a multitude of possible aspects."  Br. p. 2.

We begin by noting that because applicant seeks registration on the Supplemental Register, applicant has conceded that the marks are merely descriptive.  See In re Eddie Z's Blinds and Drapery, Inc., 74 USPQ2d 1037, 1039 (TTAB 2005); Perma Ceram Enterprises Inc. v. Preco Industries Ltd., 23 UPSQ2d 1134, 1137 n.11 (TTAB 1992). Thus, the arguments regarding other meanings for "REDUCER" and double entendre are inapplicable.  However, to the extent applicant's arguments have any relevance, the fact that the word reduce may be used in its verb form to

indicate a reduction of a multitude of things in other contexts does not detract from the generic usage of the noun "REDUCER" in the context of the goods in issue. It is well established that we must look to the meaning of the term within the context of the identified goods. In re Chopper Industries, 222 USPQ 258, 259 (TTAB 1984). Moreover, the cases relied upon by applicant, involved the issue of mere descriptiveness and terms that presented a double meaning that would be perceived as completely arbitrary and fanciful, unlike the proposed mark before us which simply names the goods inasmuch as they consist of a flowmeter combined with a reducer. See Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 131 USPQ 55 (2d Cir. 1961) (POLYPITCHER not merely descriptive of polyethylene pitchers inasmuch as it is an incongruous expression suggestive of MOLLY PITCHER) and In re Colonial Stores Inc., 394 F.2d 549, 157 USPQ 382 (CCPA 1968) (SUGAR & SPICE not merely descriptive of bakery products inasmuch as it is suggestive of a nursery rhyme).

As noted above, the evidentiary burden of establishing whether a term is generic rests with the Office and the showing must be based on clear evidence. The evidence of record establishes that piping that joins pipes of a different diameter in order to reduce pipe diameters to

facilitate flow measurement are called "REDUCERS" and flow meters are used in combination with "REDUCERS."  The record also shows that some flow meters contain "REDUCERS" as part of a single product, thus eliminating the need for a separate "REDUCER."

Inasmuch as "REDUCER" is the generic term for piping that joins pipes of different diameters together and applicant's goods act, inter alia, as reducers, the examining attorney has established a prima facie showing that the term "REDUCER" is generic for applicant's goods which has not been rebutted by applicant.

**Decision**:  The refusal to register on the Supplemental Register based on genericness under Section 23 in application Serial No. 78180535 and the refusal to register on the Supplemental Register based on the failure to provide a disclaimer under Section 6 in application Serial No. 78180540 are affirmed.  However, if applicant submits to the Board the required disclaimer of REDUCER in application Serial No. 78180540 within thirty days, this decision will be set aside as to the affirmance of the disclaimer requirement, and application Serial No. 78180540 will then proceed to registration on the Supplemental

11

Register.  See Trademark Rule 2.142(g), 37 C.F.R.

§2.142(g).[7]

---

[7] The standardized printing format for the required disclaimer text is as follows:  "No claim is made to the exclusive right to use REDUCER apart from the mark as shown."  TMEP §1213.08(a) (5th ed. September 2007).