This Opinion is a
Precedent of the TTAB

Mailed: April 28, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Tapco International Corporation*

_____

Serial Nos. 86075950, 86078755, and 86079474[1]

_____

Staci R. DeRegnaucourt of the Quinn Law Group PLLC,
    for Tapco International Corp.

Fred Carl III, Trademark Examining Attorney, Law Office 108,
    Andrew Lawrence, Managing Attorney.

_____

Before Shaw, Hightower, and Larkin,
    Administrative Trademark Judges.

Opinion by Shaw, Administrative Trademark Judge:

Tapco International Corp. ("Applicant") filed three applications seeking

registrations on the Principal Register of the following terms as standard character

marks:

**KLEER ADHESIVES**, for "Adhesives for the building construction industry,
namely, the bonding of PVC[2] building materials; industrial adhesives for coating

---

[1] Because the appeals involve the same issues and similar records, we hereby consolidate them and issue a single opinion for all three appeals. *Trademark Trial and Appeal Board Manual of Procedure* (TBMP) § 1214 (Jan. 2017).

[2] PVC is an abbreviation for polyvinyl chloride, "a white, water-insoluble, thermoplastic resin, derived by the polymerization of vinyl chloride: used chiefly for thin coatings, insulation, and pipings." Http://www.dictionary.com/browse/pvc, based on the *Random House Dictionary*

and sealing of PVC building materials, all of the foregoing curing optically opaque, color-matched, or otherwise non-transparent," in International Class 1, and "Adhesive mortar for building purposes, namely, the bonding, coating, and sealing of PVC building materials, all of the foregoing curing optically opaque, color-matched, or otherwise non-transparent," in International Class 19;[3]

**KLEER MOULDINGS**, for "Non-metal interior and exterior architectural mouldings and finish trim made of synthetic and manmade materials, namely, cellular PVC; non-metal decorative interior and exterior mouldings and decorative trim made of synthetic and manmade materials, namely, cellular PVC, for use in building construction; building products, namely, decorative interior and exterior cellular PVC trim, none of the foregoing being composed of wood and all of the foregoing being composed exclusively of cellular PVC," in International Class 19;[4] and

**KLEER TRIMBOARD**, for "Non-metal building products, namely, lumber made of manmade and synthetic materials, namely, cellular PVC; lumber of manmade and synthetic materials, namely, cellular PVC, for use as fascia, rakes, band boards, corner boards, frieze boards, casings, soffits; non-metal architectural mouldings and exterior finish trim of synthetic and manmade materials, namely, cellular PVC; non-metal decorative exterior mouldings and decorative exterior trim of synthetic and manmade materials, namely, cellular PVC, for use in building construction; building materials, namely, cellular PVC trim, none of the foregoing being composed of wood and all of the foregoing being exclusively composed of cellular PVC," in International Class 19.[5]

Applicant has disclaimed the exclusive right to use the words ADHESIVES, MOULDINGS, and TRIMBOARD, respectively. Amendments to allege use were filed in each application and accepted. Applicant claims ownership of the following prior registrations on the Principal Register, among others:

---

(2017). The Board may take judicial notice of definitions from dictionaries, including online dictionaries that exist in printed format or have regular fixed editions. *See In re Cordua Rests. LP*, 110 USPQ2d 1227, 1229 n.4 (TTAB 2014) *aff'd* 823 F.3d 594, 118 USPQ2d 1632 (Fed. Cir. 2016).

[3] Application No. 86075950, filed on September 26, 2013, based upon Applicant's allegation of a *bona fide* intention to use the mark in commerce.

[4] Application No. 86078755, filed on September 30, 2013, based upon Applicant's allegation of a *bona fide* intention to use the mark in commerce.

[5] Application No. 86079474, filed on October 1, 2013, based upon Applicant's allegation of a *bona fide* intention to use the mark in commerce.

- Reg. No. 3066385, for the standard character mark **KLEER**, issued March 7, 2006, claiming a date of first use in commerce of December 27, 2004, for use on goods identified as "Lumber made of manmade materials for general industrial use," in International Class 19 (renewed);
- Reg. No. 3309739, for the standard character mark **KLEERBEED**, issued October 9, 2007, claiming a date of first use in commerce of January 1, 2007, for use on goods identified as "Lumber made out of manmade materials for general industrial use," in International Class 19 (renewed);
- Reg. No. 3428623, for the standard character mark **KLEERLOK**, issued May 13, 2008, claiming a date of first use in commerce of January 1, 2007, for use on goods identified as "Lumber made out of manmade materials for general industrial use," in International Class 19 (Sec. 8 & 15 Declarations accepted and acknowledged);
- Reg. No. 3264383, for the standard character mark **KLEERPAK**, issued July 17, 2007, claiming a date of first use in commerce of April 1, 2005, for use on goods identified as "Lumber made out of manmade materials for general industrial use," in International Class 19 (renewed);
- Reg. No. 3066414, for the mark , issued March 7, 2006, claiming a date of first use in commerce of December 27, 2004, for use on goods identified as "Lumber made of manmade materials for general industrial use," in International Class 19 (renewed);
- Reg. No. 3066385, for the standard character mark **KLEER**, issued March 7, 2006, claiming a date of first use in commerce of December 27, 2004, for use on goods identified as "Lumber made of manmade materials for general industrial [sic]," in International Class 19 (renewed);
- Reg. No. 4676306, for the standard character mark **KLEER DECKING** (with a disclaimer of "DECKING"), issued January 20, 2015, claiming a date of first use in commerce of October 31, 2010, for use on goods identified as "Non-metal building products, namely, non-metal decking made of manmade and/or synthetic materials," in International Class 19;
- Reg. No. 4689503, for the standard character mark **KLEERStart**, issued February 17, 2015, claiming a date of first use in commerce of October 31, 2008, for use on goods identified as "Non-metal building products, namely, non-metal architectural mouldings and finish trim, non-metal decorative mouldings and decorative trim for use in building construction, in the nature of frieze boards; building materials, namely, cellular PVC trim," in International Class 19; and

- Reg. No. 4791214, for the standard character mark **KLEERSnap**, issued August 11, 2015, claiming a date of first use in commerce of March 3, 2009, for use on goods identified as "Non-metal building materials made of manmade and/or synthetic materials, namely, structural solid flexible PVC post wraps designed to encapsulate building posts and other structural members to deter exposure to moisture, insects, and other elements; non-metal architectural mouldings and finish trim; non-metal decorative mouldings and decorative trim for use in the building construction industry; and building materials, namely, cellular PVC trim," in International Class 19.

The Trademark Examining Attorney refused registration of Applicant's applied-for marks under Section 2(a) of the Trademark Act, 15 U.S.C. § 1052(a), on the ground that they are deceptive. When the refusals were made final, Applicant appealed and requested reconsideration. The Examining Attorney denied the requests for reconsideration and the appeals resumed. We affirm in part and reverse in part.

Analysis

In accordance with Section 2(a) of the Trademark Act, registration must be refused if a term is deceptive of a feature or an ingredient of the identified goods. *In re Budge*, 857 F.2d 773, 8 USPQ2d 1259, 1260 (Fed. Cir. 1988). The test for deceptiveness is whether all three of the following criteria are met:

(1) Is the term misdescriptive of the character, quality, function, composition or use of the goods?

(2) If so, are prospective purchasers likely to believe that the misdescription actually describes the goods?

(3) If so, is the misdescription likely to affect the purchasing decision of a significant portion of relevant consumers?

*Id.*; *see also In re Spirits Int'l, N.V.,* 563 F.3d 1347, 90 USPQ2d 1489, 1495 (Fed. Cir. 2009) (holding that the test for materiality incorporates a requirement that a "significant portion of the relevant consumers be deceived").

The Examining Attorney initially refused registration of the terms under Section 2(e)(1) as deceptively misdescriptive, but these refusals were withdrawn as "incorrect" when the Section 2(a) deceptiveness refusals were issued.[6] In response to the Section 2(e)(1) refusals, Applicant had amended the applications to seek registration under Section 2(f) in the alternative. However, because Section 2(a) is an absolute bar to the registration of deceptive matter on either the Principal Register or the Supplemental Register, a claim that a mark has acquired distinctiveness cannot obviate a Section 2(a) deceptiveness refusal. *See In re Charles S. Loeb Pipes, Inc.*, 190 USPQ 238, 241 (TTAB 1975); *Trademark Manual of Examining Procedure* (TMEP) § 1203.02 (Jan. 2017).

### A. Serial No. 86075950

We begin with KLEER ADHESIVES. Regarding the first *Budge* factor, whether KLEER is misdescriptive of the character, quality, function, composition or use of the goods, it is the Examining Attorney's position that the term KLEER is the phonetic equivalent of "clear" which is misdescriptive of Applicant's adhesive products because they are identified as "curing optically opaque, color-matched, or otherwise non-transparent." In other words, "clear" describes transparent glue whereas Applicant's adhesives are not, in fact, transparent.

Applicant first argues that "the applied-for mark is not CLEAR but KLEER, which is an arbitrary or fanciful [sic], when applied to the Applicant's applied-for goods, and

---

[6] *See* Ser. No. 86075950, Office Action of August 6, 2014; Ser. No. 86078755, Office Action of January 21, 2015; and Ser. No. 86079474, Office Action of January 26, 2015.

at its origin was selected as an arbitrary and fanciful term for the Applicant's goods sold in commerce."[7] This argument is unpersuasive. It is settled that the phonetic equivalent of a deceptive term is also deceptive. *See R. Neumann & Co. v. Overseas Shipments, Inc.*, 326 F.2d 786, 140 USPQ 276 (CCPA 1964) (adoption of term "HYDE" instead of "HIDE" for "plastic material of leatherlike appearance made into shoes" does not mitigate deceptiveness); *In re Organik Techs., Inc.*, 41 USPQ2d 1690, 1694 (TTAB 1997) (ORGANIK, which is the phonetic equivalent of the term "organic," is misdescriptive of textiles and clothing not made of organic cotton). Although we note that KLEER has a non-standard spelling, Applicant has provided no evidence that consumers would perceive KLEER as something other than the phonetic equivalent of "clear." *See generally Standard Paint Co. v. Trinidad Asphalt Mfg. Co.*, 220 U.S. 446, 455 (1911) (consumers would find "Ruberoid" as a simple misspelling for the term "rubberoid"); *In re Omaha Nat'l Corp.*, 819 F.2d 1117, 1118, 2 USPQ2d 1859, 1860 (affirming the Board's finding that FirsTier, would be seen as the phonetic equivalent of "first tier"); *In re Hercules Fasteners, Inc.*, 203 F.2d 753, 97 USPQ 355, 358 (CCPA 1953) ("Fastie" would be perceived as merely a phonetic spelling of "fast tie"). Inasmuch as Applicant has not submitted evidence that consumers would view KLEER as having another significance or meaning, and because KLEER is the phonetic equivalent of "clear," we find that consumers will understand KLEER to have the meaning "clear."

---

[7] Ser. No. 86075950, Applicant's Br., p. 17; 7 TTABVUE 18.

Applicant next argues that the meaning of the term "clear" is so broad that it cannot be misdescriptive of Applicant's goods: "[E]ven if the term CLEAR, in one form of its meaning, e.g. 'transparent', could be considered descriptive or mis-descriptive of the Applicant's applied-for goods . . . CLEAR is such a broad term it cannot primarily merely describe any particular good, service, or thing."[8] In support, Applicant made of record a definition of the term "clear" which included a variety of different meanings.[9] But deceptiveness, or misdescriptiveness, is not considered in the abstract. Instead, it must be determined in relation to the goods for which registration is sought. Therefore, the fact that a term may have different meanings in different contexts is not controlling. *See In re RiseSmart Inc.*, 104 USPQ2d 1931, 1933 (TTAB 2012); *see also R. Neumann & Co. v. Bon-Ton Auto Upholstery, Inc.*, 326 F.2d 799, 801, 140 USPQ 245, 247 (CCPA 1964) (based on the goods at issue, "hide" more likely to refer to animal hide than to other definitions of "hide"). Because "clear" is defined as "transparent," and the identification of goods for both classes specifies that the adhesives in question cure in an "optically opaque, color-matched, or otherwise non-transparent" fashion, there is no question that Applicant's goods are not "clear." Accordingly, we find that KLEER misdescribes the character of Applicant's products when cured.

We turn next to the second *Budge* factor: whether prospective purchasers are likely to believe that the misdescription actually describes the goods. It is the

---

[8] *Id.* at 19; 7 TTABVUE 20.

[9] Ser. No. 86075950, Applicant's response of March 1, 2016, TSDR pp. 47-50.

Examining Attorney's position that "[p]rospective purchasers would be likely to believe this misdescription in the wording KLEER ADHESIVES, because other manufacturers provide clear adhesives for use in the construction industry."[10] In support, the Examining Attorney made of record a number of internet web pages offering "clear" adhesive products sold by third parties. The following excerpts are representative:[11]





---

[10] Ser. No. 86075950, Examining Attorney's Br., p. 7; 9 TTABVUE 7.
[11] Ser. No. 86075950, Office Action of January 17, 2014, TSDR pp. 12-29.



Liquid Nails 2.5-oz. Clear Small Projects Silicone Adhesive

Model # LN-207  Store SKU # 452244

★★★★☆ (4) ∨  |  Write a Review +  |  Ask & Answer (3) +

**$3.97** / each

Store Only

Buy Online, Pick Up In Store Today



Henkel 68882 Power Grab All Purpose Clear Construction Adhesive, 6-Ounce, Clear
by Henkel Corporation
Be the first to review this item

Price: **$4.79**

**In stock.**
Usually ships within 3 to 4 days.
Ships from and sold by BIC Warehouse.

- This construction adhesive has high initial tack or instant grab compared to other latex construction adhesives on the market today
- It applies white, dries clear and has extremely high tack that eliminates the need for nails and screws in many DIY and repair jobs
- The adhesive has a very low odor and requires only soap and water to clean up, making it safe, easy to use and environmentally friendly
- Recommended for bonding stainless steel, glass, foam board, cork, carpet, stone, brick, concrete, chip board, ceramics, wood, plaster and more
- Water-resistant, making it ideal for humid areas

› See more product details



Frost King 2-in x 100-ft Clear Bopp Film/Acrylic Adhesive Window Weatherstrip

Item#: 96179 | Model #: T96A
★★★★★  💬 5 reviews | Write a review

**$7.56**

The Examining Attorney also made of record several adhesive-product web pages, news stories, and "how to" articles about adhesives, discussing the use of "clear" adhesives.[12]

- www.cyberbond1.com - discussing both black and clear adhesives and stating: "When you require a bond that cannot be seen, you need clear adhesives from Cyberbond."

- www.proconstructionguide.com - providing information on various uses of construction adhesives, stating: "Some vinyl siding trim elements can be knocked loose or cracked over the years . . . . Use a clear, non-hardening (stays flexible) waterproof sealant to patch it up."

- www.diynetwork.com - providing information on adhesives, glue, and caulk, stating: "Construction adhesives, such as Loctite and Liquid Nails brands [are] good for smaller jobs like attaching trim, molding and paneling. . . . And one of the best parts is that [Liquid Nails] dries clear. . . ."

Some of the products shown above are not comparable to Applicant's construction adhesives and, therefore, do not provide insight regarding the likely beliefs of Applicant's prospective consumers. For example, the "Roman PRO-880" adhesive is a wallpaper adhesive and the "Frost King 100-ft Clear Bopp[13] Film/Acrylic Adhesive Window Weatherstrip" is a type of weather-stripping tape. Inasmuch as these goods are not comparable to Applicant's construction adhesives, they do not establish that prospective purchasers of Applicant's goods are likely to believe that Applicant's KLEER ADHESIVES are "clear."

Nevertheless, the other products shown above, as well as the web pages, news stories, and "how to" articles, establish that some adhesives are, in fact, clear and that this feature is touted to consumers. For example, the product description

---

[12] Ser. No. 86075950, Office Action of March 4, 2015, TSDR pp. 2-16.

[13] Bi-Oriented Polypropylene. Http://www.acronymfinder.com/BOPP.html.

accompanying the "Eco-Bond Ultra Clear Adhesive" uses "clear" to describe the goods: "ECO-BOND Ultra Clear is a high performance, non-toxic, easy to use sealant. It's [sic] advanced clear formulation has no toxic odor and is shower ready in under 30 minutes. . . ."[14] Similarly, the "Liquid Nails" and "Loctite" adhesives excerpts use the term "clear" to describe the products which are comparable to Applicant's products. The Liquid Nails "how to" review states: "one of the best parts is that [Liquid Nails] dries clear."[15] The cyberbond1.com web site indicates that clear adhesives should be used when consumers "require a bond that cannot be seen."[16] This evidence suggests many adhesives are marketed as being clear and, therefore, prospective consumers are likely to believe that the misdescription actually describes the goods.

Applicant argues that consumers are unlikely to believe its adhesives are clear because they are sold only to "a sophisticated relevant consumer base of builders, contractors, sub-contractors, and other knowledgeable construction professionals."[17] These consumers, Applicant continues, would be "savvy enough to realize that color-matched adhesives for use with the Applicant's like-branded KLEER PVC building products are adhesives sold under the KLEER brand umbrella, as the term KLEER is viewed in the relevant industry as a house mark and known source identifier covering a wide variety of products."[18] Moreover, Applicant argues that its goods are sold only through wholesale distribution channels open only to construction

---

[14] Ser. No. 86075950, Office Action of January 17, 2014, TSDR pp. 13.

[15] Ser. No. 86075950, Office Action of March 4, 2015, TSDR p. 15.

[16] *Id.* at 2.

[17] Ser. No. 86075950, Applicant's Br., p. 21; 7 TTABVUE 22.

[18] *Id.* at 23; 7 TTABVUE 24.

professionals: "Simply stated, the average homeowner cannot generally walk into a home improvement retailer, such as, Lowe's, Home Depot, or another similar big box store and purchase KLEER products off the shelves."[19]

Applicant's argument that its goods are sold only to sophisticated consumers via limited channels of trade is unavailing. It is well settled that registrability must be determined based on the identification of goods as set forth in the application. *See Octocom Sys, Inc. v. Houston Computers Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed."). Although some of the goods in Class 1 are expressly identified as "for the building construction industry," that limitation does not apply to all of the goods. And there is no limitation for the goods in Class 19. Even the "building construction industry" language in Class 1 does not limit the trade channels through which the goods might be sold, e.g., in a home improvement store where they would be available both to contractors and homeowners. As discussed *supra*, Applicant provides no evidence indicating that consumers would view KLEER as having another meaning, thus, there is nothing to suggest any industry custom or understanding that KLEER does not mean clear to building construction professionals. In addition, Applicant's catalogs, although confirming that Applicant's

---

[19] *Id.*

adhesives may be "specifically formulated for use with KLEER PVC products"[20] do not establish that Applicant's adhesives could not be purchased by consumers simply looking for a clear, general-purpose PVC adhesive. Accordingly, we must presume that Applicant's PVC adhesives, including those "for the building construction industry," are sold through both wholesale and retail channels of trade to all prospective consumers of such adhesives, including, for example, "average homeowners" to whom the Examining Attorney's evidence is directed.

We recognize that Applicant has used the KLEER element of its mark for over ten years, and claims use of the mark KLEER ADHESIVES for over five years, based on Applicant's declaration supporting the claim of acquired distinctiveness under Section 2(f). In addition, Applicant touts its adhesives via its catalogs as part of a "comprehensive system"[21] comprising the adhesives and trim products. In *Woolrich*, *In re Woolrich Woolen Mills Inc.*, 13 USPQ2d 1235, 1238 (TTAB 1989), this Board found, *inter alia*, that an applicant's evidence of nearly seventy years of use, catalogs showing a wide variety of nonwoolen clothing, and a limitation in the identification of goods to use as a house mark, together with declaration evidence that established that consumers did not view WOOLRICH to indicate that the products contained wool, helped support a finding that WOOLRICH was not deceptive for garments not containing wool. Here, in contrast, we find that Applicant's comparatively shorter duration of use and its catalog promotion of KLEER ADHESIVES to prospective

---

[20] Ser. No. 86075950, Applicant's Br., p. 21; 7 TTABVUE 22.

[21] Ser. No. 86075950, Applicant's request for reconsideration of March, 1, 2016, TSDR p. 28.

consumers as part of a "comprehensive system" do not establish that consumers would not believe that Applicant's adhesives are clear.

We find that prospective purchasers are likely to believe that the term KLEER describes Applicant's adhesive products when, in fact, they are not clear.

We turn next to the third *Budge* factor: whether the misdescription is likely to affect the purchasing decision of a significant portion of relevant consumers. That is, whether the misdescriptive quality or characteristic would make Applicant's adhesives more appealing or desirable to prospective purchasers. *See In re White Jasmine LLC*, 106 USPQ2d 1385, 1392 (TTAB 2013) (citing *In re Juleigh Jeans Sportswear Inc.*, 24 USPQ2d 1694, 1698-99 (TTAB 1992)).

The record shows that clear adhesives are commonly used and highly desirable for joining building materials. A clear adhesive is versatile because it can be used to join products of any color. The evidence regarding the Loctite and Liquid Nails products, discussed *supra,* shows that a clear finish is often touted in advertising or product reviews. Because clear adhesives have important and desirable advantages over non-transparent adhesives, we find that a clear-drying finish would be material to the decision by consumers to purchase PVC adhesives. *See In re White Jasmine*, 106 USPQ2d at 1392.

Applicant argues that a clear finish is not material to consumers because "the post-curing color preference of an individual consumer between an adhesive having an optically clear post-curing coloring and an adhesive having an optically opaque or

color-matched post-curing coloring is one of **mere personal preference**."[22] We disagree. A product is more desirable because of objective standards or criteria that provide an inducement to purchase the goods beyond that of mere personal preference. *See* TMEP § 1203.02(d)(ii) (while objective criteria can establish materiality, mere individual personal preferences as to things such as flavor, scent, and color would typically not be considered material). The record establishes that clear adhesives are objectively more useful than non-transparent adhesives because they provide a bond "that cannot be seen" or which can be used to join products of any color. This feature makes clear adhesives more desirable than other non-transparent adhesives.

For the foregoing reasons, we find Applicant's mark, KLEER ADHESIVES, to be deceptive under Section 2(a) of the Trademark Act.

### B. Ser. Nos. 86078755 and 86079474

We turn next to KLEER MOULDINGS and KLEER TRIMBOARD. As discussed in the context of adhesives, we agree with the Examining Attorney that the term KLEER is the phonetic equivalent of "clear." Regarding the first *Budge* factor, it is the Examining Attorney's position that "[t]he word KLEER in the mark[s] indicates that the goods are made of 'clear wood.' The word 'clear' when applied to wood indicates that the wood is free from knots or other defects typically found in some natural wood products."[23] That is, Applicant's KLEER marks are misdescriptive

---

[22] *Id.* at 12; 7 TTABVUE 13.

[23] Ser. No. 86078755, Examining Attorney's Br., p. 5; 9 TTABVUE 5.

because Applicant's synthetic products are not made from wood free from knots or other defects. We construe the Examining Attorney's argument to be that, because of the distinction between clear wood and knotty wood, consumers of Applicant's synthetics will likely assume there is a similar distinction between synthetic building products that are clear of any defects and those that are not.

In support of the refusal under Section 2(a), the Examining Attorney made of record a number of internet web pages and news stories showing use of the term "clear" to describe wood that is free of knots and other defects. The following news stories are representative:[24]

- The Sunday Oregonian - *A basic glossary may help DIYers winnow terms about wood* ("**Clear**: Wood that is free of knots, pitch pockets and other defects. Typically the most expensive grade of wood.");

- The Boston Globe - *Tree House Salvaged lumber from diseased butternut trees finds a second life in one woodworker's home* ("**Clear** wood with no knots isn't the only thing designers want any more.");

- The San Diego Union-Tribune - *OLD GLORY; Meticulously restored Craftsman is in its prime again* ("John, 47, began stripping paint off a door and part of the living room wall and found now-precious **clear**-heart redwood.");

- The Seattle Times - *Canadian lumber hit by U.S. duties* ("The tariffs also will deal a severe blow to high-value cedar and **clear** wood lumber shipped by Canada to U.S. markets.");

- Los Angeles Times - *In The Swing; Today's Backyard Play Sets Are Safer, Sturdier, More Attractive Than Ever* ("Look for kits that include a complete list of the lumber you'll need to avoid repeated trips to the store. And choose straight, **clear** wood to help ensure a safe, attractive play set.");

- St. Louis Post-Dispatch - *Two Sides to Gifts For Valentine's Day: Simple And Spectacular* ("Back at my workbench, I traced all three hearts on a piece of plywood. . . . Best to use a whole, **clear** wood without knots. Clear pine, Douglas fir, redwood heart, oak, whatever you wish.");

---

[24] Ser. No. 86078755, Office Action of January 17, 2014.

- The Miami Herald - *Having trouble finding good lumber? Here's help* ("A few small, tight knots in a piece of lumber should usually not be considered a serious defect (knot-free or '**clear**' wood, even softwood, is very expensive).");

- The Washington Post - *Measures of Wall Paneling; Judging Degrees in Quality of Design and Materials* ("All the grading systems put **clear** wood without knots and grain variations in the highest category. It's certainly rarer and more expensive than other grades but, to some, **clear** wood lacks the character of a grainy birch or knotty pine that is less **clear** and less expensive. If your paneling will have a clear finish such as polyurethane that enhances natural variations in the grain, **clearer** grades may look more subdued, uniform and elegant.");

- The Washington Post - *Looking for a Port in the Storm; As the Water Rises, So Do Concerns About Recovering From Flood Damage* ("The Redwood Landscape Guide includes construction details and specifications of different redwood grades, from rough and knotty 'merchantable' to nearly **clear**, orange-amber 'construction heart.'"); and

- The Miami Herald - *Rack Up Stemware Glasses* ("First, select your materials, which include 1-inch by 4- inch boards and 1-inch by 2-inch furring strips. Keep in mind that appearance is a factor, so you may want to choose a higher grade of board that has **clear** wood.").

This evidence establishes that the term "clear" describes wood that is free of knots and defects. This does not answer the question whether KLEER misdescribes Applicant's goods, however, inasmuch as they are not actually made of wood.

Applicant argues that KLEER is not misdescriptive of its synthetic products because the meaning of "clear" is not limited to wood lumber: "Nowhere in ANY provided definitions is there a reference indicating that the term CLEAR connotes an inherent wood composition or a relationship to wood for the noun which it modifies."[25] Instead, Applicant argues, its synthetic products, as a man-made product, is "without

---

[25] Ser. No. 86078755, Applicant's Br., p. 15; 7 TTABVUE 16.

discoloration, defect, or blemish"[26] in the same way that wood is clear. Applicant has made of record several dictionary definitions of the word "clear," including the following definitions, *inter alia,* from Dictionary.com:[27]

1. free from darkness, obscurity, or cloudiness; light: a clear day.
2. transparent; pellucid: clear water.
3. without discoloration, defect, or blemish: a clear complexion; a clear pane of glass.
4. of a pure, even color: a clear yellow.
5. easily seen; sharply defined: a clear outline.

The Examining Attorney's evidence shows that the term "clear" has an understood meaning when used in connection with wood lumber; however, the record does not establish what prospective consumers are likely to understand when "clear" is used on a different product, namely, synthetic trim and mouldings. That is, there is no evidence in the record establishing a similar recognized distinction between clear and blemished synthetic building products. Thus, we find that there is not sufficient evidence to establish that the term "clear" (or KLEER) describes plastic building products in the same manner in which the term is used to apply to building materials made of wood and only wood.

In view of this determination, we need not reach the third part of the *Budge* test in order to conclude that KLEER MOULDINGS and KLEER TRIMBOARD are not deceptive.

---

[26] *Id.*

[27] Http://www.dictionary.com/browse/clear; Serial No. 86078755, Applicant's response of May 23, 2014, TSDR p. 10.

***Decision***: The refusal to register Applicant's mark KLEER ADHESIVES under Section 2(a) of the Trademark Act is affirmed. The refusals to register Applicant's marks KLEER MOULDINGS and KLEER TRIMBOARD are reversed.[28]

---

[28] Prior to publication of the marks, the Examining Attorney should ensure that Applicant's amendments to seek registration under Section 2(f) in the alternative have been withdrawn.